**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                                                   No. CR 05-2369 JB

DANIEL ZUNI,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Notice of Intent to Offer Res Gestae Evidence; or, in the Alternative, to Introduce 404(b) Evidence of Other Crimes or Wrongful Acts, filed May 30, 2006 (Doc. 40); (ii) the Supplemental and Amended Notice of Intent to Offer Res Gestae Evidence; or, in the Alternative, to Introduce 404(b) Evidence of Other Crimes or Wrongful Acts, filed June 1, 2006 (Doc. 42); (iii) the Second Amended Notice of Intent to Offer Res Gestae Evidence; or, in the Alternative, to Introduce FRE 404(b) Evidence of Other Crimes or Wrongful Acts or FRE Evidence, filed June 26, 2006 (Doc. 53); and (iv) the Defendant's Second Motion in Limine and Memorandum, filed June 26, 2006 (Doc. 50). The Court held a hearing on the United States' notices and Defendant Daniel Zuni's motion on June 29, 2006. The primary issue is whether the Court should allow the United States to introduce, at trial, evidence that Zuni committed other acts for a non-propensity purpose. Because some of the evidence that the United States seeks to present is being appropriately offered for a non-propensity purpose, and because the danger of unfair prejudice to Zuni does not substantially outweigh the probative value of that evidence, the Court will admit some of the evidence.

## FACTUAL BACKGROUND

The United States' notices seek to introduce, and Zuni's Second Motion in Limine seeks to exclude, certain pieces of res gestae and rule 404(b) evidence.

**1.     Res Gestae Evidence.**

The United States seeks to introduce the following res gestae evidence. The United States intends to present evidence at trial that, on May 31, 2005, the Family Court of the Navajo Nation, District of Crownpoint, New Mexico, issued a Mutual Order of Protection against Zuni as a result of a pattern of domestic violence that Zuni perpetrated on the alleged victim, culminating in an aggravated assault in May 2005. See Notice of Intent at 1-2. The United States represents that Zuni was served on June 3, 2005, and was given reasonable notice and opportunity to be heard. See id. at 2. The United States seeks to present evidence that Zuni willfully violated the May 31st Order on September 10, 2005 (non-consensual sexual intercourse with the alleged victim) and September 17, 2005 (interference with child custody at soccer match). See Second Amended Notice at 2.

The United States contends that, on September 17, 2005, in violation of the restraining order, Zuni went to the Gallup Soccer Field and physically pulled his daughter off the field and into the parking lot. See Notice of Intent at 2. The United States asserts that the alleged victim attempted to free her daughter from Zuni's grip, and it was only after a soccer coach, Jaime Trevino, intervened, that Zuni let go of the girl. See id. The United States alleges that Zuni then drove off from the field. See id. Gallup police were summoned, but Zuni had left the area by the time a police officer arrived. See id. Zuni disputes the United States' allegations about the soccer field incident. See Second Motion in Limine at 2. Zuni contends that there was no injury, no threat, no assault, nor any sexual assault on that date. See id.

A modified restraining order was issued on September 20, 2005. See generally Domestic Abuse Protection Order at 1-3. Zuni concedes that the September 20, 2005 order was in effect at the time of the September 21, 2005 incident that is the subject of this indictment. See id. at 1. On September 21, 2005, in alleged violation of the September 20th restraining order, Zuni allegedly confronted the alleged victim at the Gallup Indian Medical Center concerning her changing their children's school. See Notice of Intent at 2. The United States alleges that Zuni got in the alleged victim's vehicle and prevented her from going to the Police Department or the Sheriff's Office. See id. The United States asserts that Zuni ordered her to drive south against her will. See id.

The United States contends that, on three separate occasions, the alleged victim attempted to turn her vehicle back in the direction of Gallup, but Zuni took the wheel and threatened to kill her. See id. at 3. The United States argues that Zuni then ordered the alleged victim to stop at a point on NM State Route 32, where he physically assaulted and threatened her. See id.

According to the United States, Zuni and the alleged victim then stopped at El Sabino Market and gas station to get gas for the alleged victim's vehicle. See Second Amended Notice at 3. The United States represents that, at this location, outside of Zuni's presence, the alleged victim told the market clerks that Zuni frightened her and asked them to call the police; she also left her cellular telephone with them. See id.

The United States alleges that the two people then drove away from the market. See id. Soon after, when Zuni discovered that the alleged victim did not have her cellular telephone, he forced her to return to the El Sabino Market in an attempt to retrieve her telephone. See id. The United States asserts that, when they returned to where they had previously stopped for gas, she pretended not to find the cellular telephone. See id.

The United States contends that Zuni then ordered the alleged victim to drive to El Morro National Monument. See id. This location is the point where the United States alleges the kidnapping began for purposes of federal jurisdiction, as alleged in Count 1 of the Indictment. See id. The United States asserts that, at El Morro National Monument, the alleged victim and Zuni hiked to the top of the cliff, where Zuni sexually assaulted the alleged victim. See id. at 3-4. Count 2 of the Indictment alleges this attack. According to the United States, upon leaving El Morro National Monument, Zuni ordered the alleged victim to leave the highway and drive into the forest, where he repeatedly sexually assaulted her again. See id. at 4.

**2.    404(b) Evidence.**

The United States intends to present additional 404(b) evidence of Zuni's additional prior acts:

- 1996-1998 -- Initial stages of relationship with [the alleged victim]. Defendant deceived victim into believing that he had no family. Then used his position of authority as her police cadet training officer and sergeant to cause her to fall in love with him and to begin a sexual and later a domestic relationship.

- August 28, 1999 – Sexual assault by defendant as Navajo Police Officer of Jane Doe 2 (Mrs. Christina Upshaw). Defendant responded to battered spouse, domestic violence call and caused female victim to disrobe and then fondled her breasts and kissed her. A formal complaint was made to Navajo Police and after an investigation, defendant was disciplined.

- September 18, 1999 – Assault and battery of Jane Doe 3 (Ms. Tonilee Bicenti). Defendant had a long-term domestic relationship which bore two children. While already engaged in a sexual and domestic relationship with Jane Doe 1, Defendant went to home of Jane Doe 3 and battered her, threatening to kill her if she did not stop seeing another man. A restraining order was issued and before it was physically served on defendant, he returned to intimidate the victim again. He was ultimately served, arrested and disciplined by the Navajo Police Department. This incident, together with previous incidents apparently led to his being terminated as a police officer.

- June 13, 2003 – Battery and false imprisonment of [the alleged victim]. Defendant became enraged about [the alleged victim] seeing another man and refused to allow her to leave to go to work and threatened to harm her if she did, after physically assaulting and battering her.  Police had to intervene to get her out of the house.  [The alleged victim] sought a restraining order and then failed to show up for the hearing and it was dismissed.  She attempted to move out of the house with her children and began to live with her sister, while still seeing the defendant from time to time.

- Feb. through May, 2004 – Intimidation, control and forced sexual intercourse with Jane Doe 4 (Angie Evans).  After the defendant began to work with NCI, in Gallup, according to a lengthy written complaint, following a series of earlier complaints against the defendant, stated that the defendant set about to intimidate and control the director of security, whose job he publicly proclaimed he wanted, and ultimately talked her into a sexual relationship, by deceiving her into believing that the children that his ex-girlfriend had were adopted and that he had severed his relationship with her [the alleged victim]. According to Evans, the defendant forced her to have sex with him by refusing to take no for an answer.

- May, 2005 – Battery of [the alleged victim] and Restraining Order entered on May 31, 2005.  Defendant attempted to force an unwilling partner to have sex with him and in the process injured her knee, requiring medical attention. [The alleged victim] filed for an order of protection and one was entered against the defendant on May 31, 2005.  On June 16, a recorded hearing was held and the restraining order was entered requiring the defendant to leave the victim alone.

- July 2005 – Jane Doe 5, a client at NCI with alcoholic problem was attacked by defendant at his home and in his car.  Maria Jamon, a young alcoholic and a client or resident at NCI, where the defendant was employed, became the target of the defendant's sexual appetite and after resisting his repeated advances, agreed to go swimming with him and then went to his home to clean up.  Defendant disrobed and attempted to engage in sexual intercourse with the victim, who refused and demanded to be taken back to NCI.  When the defendant drove her back, he again began to sexually assault her and she was forced to flee from his vehicle.  She reported the attack to NCI, but not [sic] action was taken against him as a result of the HR investigation.

- July, 2005 – [Defendant] filed formal complaint against [the alleged victim], in an attempt to have her fired by the Navajo Police, in retaliation for obtaining a restraining order.

- September 10, 2005 – [The alleged victim] was sexually assaulted by defendant at Holiday Inn in Gallup while still under restraining order.

- September 17, 2005 – [The alleged victim] was forced to ask soccer coach to intervene to stop defendant from physically assaulting and removing their eldest daughter, who was attempting to play soccer, with restraining order in effect.

- September 21, 2005 – Date of alleged kidnapping and rape of [the alleged victim], with restraining order still in effect.

Table of Contents at 1-3.

## PROCEDURAL BACKGROUND

The United States has filed three notices of its intent to use evidence of other crimes, wrongs, and acts of Zuni as res gestae evidence and moves, in the alternative, in limine, for a pretrial ruling that evidence of other crimes, wrongs, and acts that Zuni committed are either admissible through rule 404(b) or independently admissible as inextricably intertwined with the charged crime, and therefore not otherwise objectionable or inadmissible as evidence. The United States represents that it will offer this evidence through the alleged victim's testimony, through the other victims identified as Jane Does 2-5, and through other lay witnesses whom the United States will call to testify in its case-in-chief.

In its two amended notices, the United States added evidence of additional incidents of rule 404(b) and/or 413 evidence that it seeks to introduce at trial. The United States provided notice fourteen days before trial. In turn, Zuni moves the Court to exclude the evidence described in the United States' notices.

## LAW REGARDING RULE 404(b) EVIDENCE

Rule 404(b) provides, in pertinent part, that "[e]vidence of other crimes, wrongs, or acts is

not admissible to prove the character of a person in order to show action in conformity therewith." The same rule allows the introduction of evidence of other crimes, wrongs, or acts for a limited purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See generally United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000).

The United States Court of Appeals for the Tenth Circuit follows an inclusive, rather than exclusive, approach to rule 404(b) evidence. See United States v. Roberts, 185 F.3d 1125, 1141 (10th Cir. 1999). "The list of proper purposes is illustrative, not exhaustive, and Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." United States v. Tan, 254 F.3d 1204, 1208 (10th Cir. 2001)(citations and internal quotations omitted)(emphasis in original).

For a court to decide whether the proposed evidence is admissible for one of the purposes listed in rule 404(b), it should apply a four-part test set forth in Huddleston v. United States, 485 U.S. 681 (1988). This test requires that

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Roberts, 185 F.3d at 1141 (quoting United States v. Jefferson, 925 F.2d 1242, 1258 (10th Cir. 1991)). The Tenth Circuit has explained that, "if the other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403." United States v. Tan, 254

F.3d at 1208. The Tenth Circuit has also instructed that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." Id. at 1211 (citing United States v. Rodriguez, 192 F.3d 946, 949 (10th Cir. 1999)) (internal quotations omitted).

## LAW REGARDING RES GESTAE

The United States Court of Appeals for the Tenth Circuit has explained that "[e]vidence of other crimes should not be suppressed when those facts come in as res gestae -- as part and parcel of the proof of the offense[] charged in the indictment." United States v. Kimball, 73 F.3d 269, 272 (10th Cir. 1995)(alteration in original)(internal quotations and citations omitted). The Tenth Circuit has approved using res gestae evidence "when it provides the context for the crime, is necessary to a full presentation of the case, or is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae." Id. (internal quotations and citations omitted). The United States Court of Appeals for the Sixth Circuit has defined res gestae as "those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." United States v. Hardy, 228 F.3d 745, 748 (6th Cir. 2000)(citations omitted). See United States v. McVeigh, 153 F.3d 1166, 1203 (10th Cir. 1999)(describing res gestae evidence as "inextricably intertwined with proper evidence" (internal quotations omitted)). As Hardy explained,

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

United States v. Hardy, 228 F.3d at 748 (citation omitted).

-8-

## ANALYSIS

The United States seeks to introduce this evidence of past acts as either res gestae or rule 404(b) evidence offered for a non-propensity purpose. The Court will grant in part and deny in part Zuni's motion in limine, because some of the United States' evidence is admissible under one of these doctrines.

**I.    RES GESTAE.**

Events that are res gestae are part and parcel of the proof of the offenses charged in the indictment. See United States v. Kimball, 73 F.3d at 272. The Tenth Circuit has approved using res gestae evidence "when it provides the context for the crime, is necessary to a full presentation of the case, or is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae." Id. The Sixth Circuit has defined res gestae as those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense. See United States v. Hardy, 228 F.3d at 748.

Of the evidence that the United States seeks to introduce, only the uncharged events of September 21, 2005 constitute proper res gestae evidence, as Zuni concedes. See Second Motion in Limine at 2. These acts, occurring before and after the charged offenses, make the charged offenses understandable by describing the context in which they arose: a trip in the alleged victim's vehicle that began with a dispute about their children and allegedly escalated into violence, culminating in kidnapping and rape. Otherwise, the jury would be confronted with evidence that Zuni kidnapped and raped the alleged victim on federal land, without any idea why the two happened to be there and why one member of this relationship would take such action against the other member. Furthermore, the evidence has a causal, spatial, and temporal connection with the charged offense;

the res gestae events of September 21, 2005, allegedly led to Zuni's commission of the charged offenses, occurred in roughly the same area as the charged offenses (the vehicle carrying Zuni and the alleged victim, and the El Morro National Monument), and took place on the same day -- likely within a few hours -- of the charged offenses.

As for the May 31 and September 20, 2005, restraining orders, and Zuni's alleged violations of the restraining orders on September 10, 17, and 21, 2005, the United States has not made a sufficient showing that they are part of the res gestae of the charged offenses. Based on the facts that the United States has thus far presented to the Court, these events are not close in time or space to the events of September 21, 2005. While these events may explain the fear that the alleged victim felt on September 21, 2005, and that led to her taking a drive and having sex with Zuni without her consent, the Court cannot reach that conclusion without first hearing the alleged victim's testimony as to what she was thinking on September 21, 2005.

The other events that the United States wishes to bring before the jury do not come within the res gestae doctrine. Most of these events occurred more than a year before the charged offenses and in a wide variety of locations. The jury does not need to know about these events to see the portrait that the United States intends to paint at trial of the events of September 21, 2005. For instance, the jury can make sense of the United States' allegations -- that Zuni took the opportunity that his encounter with the alleged victim presented to kidnap and rape her -- without knowing that he allegedly battered a different woman on September 18, 1999. These events are not so connected to the September 21, 2005, incident that removing them from the jury's consideration would be like pulling a thread and unraveling a tapestry. If the United States desires to introduce this evidence, it

will have to do so under another rule.[1]

## II.     RULE 404(b).[2]

Rule 404 (b) prohibits the use of evidence of other crimes, wrongs, or acts to prove the character of a person to show action in conformity therewith. Such evidence is admissible, however, for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. To bring prior acts evidence before a jury, the evidence must satisfy the following four-part test: (i) the evidence must be offered for a proper purpose; (ii) the evidence must be relevant; (iii) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (iv) pursuant to rule 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted. See United States v. Roberts, 185 F.3d at 1141.

---

[1] Both parties seek to discuss the complaint that Zuni filed against his wife in the summer of 2005. See Table of Contents at 2; Motion in Limine at 2, filed June 5, 2006 (Doc. 43). The Court has already allowed Zuni to discuss the complaint to demonstrate why the alleged victim would fabricate her story. See Memorandum Opinion and Order at 14-15, filed July 5, 2006 (Doc. 66). The Court has not decided whether the complaint itself should be admitted into evidence; before the Court makes such a decision, the parties will need to satisfy the Court that admission of the complaint complies with the rules of evidence, particularly the rule against hearsay and the best evidence rule. For now, the Court concludes that the United States may discuss the complaint because Zuni wants to discuss it. If Zuni objects to the United States' discussion of the complaint for some reason, he may raise the issue at trial.

[2] After the hearing, Zuni filed a Supplemental Memorandum in Support of Defendant's Second Motion in Limine, filed July 5, 2006 (Doc. 61). Zuni argues, in part, that he did not receive reasonable notice as to six of the ten incidents that the United States wishes to introduce under rule 404(b). See id. at 2. As discussed below, the Court is excluding five of those incidents on other grounds. The sixth incident is Zuni's filing of the internal affairs complaint, which Zuni wants to discuss at trial and which the Court has ruled that Zuni may discuss. Given Zuni's desire to discuss the complaint, the Court does not see how he was prejudiced by the United States' concurrent desire to discuss it as well. The Court will therefore deny Zuni's request on this ground.

The United States argues that it is offering the remaining evidence to prove something other than the forbidden propensity purpose, yet the proper purpose for which it is being offered is somewhat of a moving target. In its briefs, the United States asserts that the evidence tends to prove all of the enumerated non-propensity purposes, without any explanation why that is the case. At the hearing, the United States stated with more specificity the actual purposes that it believed the evidence served. At first, the United States explained that the evidence showed Zuni's pattern of taking advantage of women while in a position of authority:

> This defendant at that time was a police officer, he took advantage of a woman -- another victim in his capacity as a police officer, took sexual liberties with another woman. That's certainly similar enough. . . . It's part and parcel of a whole series of events where this defendant used his position of authority over women to take sexual liberties with them, and this just happens to be the the [sic] first complaint that we became aware of without yet having seen the the [sic] internal affairs file.

Transcript of Hearing at 61:10-19 (taken June 29, 2006).[3] Later, the United States broadened the purported purpose by saying it showed that Zuni had a pattern of "taking advantage of women in similar situations":

> The the [sic] issue is that this defendant knew there was no consent, and his pattern of taking advantage of women in similar situations over a seven year -- six year are [sic] period is alleged in these instances in the the [sic] 404(b) motion proves that. He'd been disciplined, eventually lost his job as a police officer. He knew about restraining orders because he violated one with his first domestic partner and he assaulted and [battered] her and was disciplined for that, in fact, arrested for that. All of these go to show that this defendant had knowledge that he had no business having sex with this victim on September 21st, 2005.

Id. at 65:6-16. See id. at 63:9-12 ("Your Honor, this and the the the [sic] others that we're going to touch on are all relevant to show the [pattern] of intentional behavior by this defendant whenever he

---

[3] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

has an opportunity to take sexual license with women."). Finally, the United States argued that the evidence showed Zuni's knowledge that the alleged victim did not consent to sex on September 21, 2005. See id. at 65:6-7, 66:15-19, 67:1-4. By citing to United States v. Tan, it also appears that the United States believes that the evidence goes to intent, because that case dealt with using prior acts to demonstrate intent.[4]

Using prior acts evidence to demonstrate a pattern of similar conduct and to show a defendant's knowledge and intent are proper purposes under rule 404(b). See United States v. Roberts, 185 F.3d at 1142 (approving the use of prior acts evidence to show "a long-standing pattern of sexually abusive behavior"); United States v. Cuch, 842 F.2d 1173, 1177 (10th Cir. 1988)(affirming the use of a prior sexual assault to show intent to commit a subsequent sexual assault). By offering the evidence for three proper non-propensity purposes, the United States has offered the evidence for a proper purpose.

Some of the evidence, however, runs aground on the next step of the four-part test: the evidence must be relevant, because it tends to prove the non-propensity purpose. For instance, the fact that Zuni entered into a consensual relationship with the alleged victim in 1996-98 by causing her to fall in love with him through deceit does not make it more probable that Zuni engaged in a pattern

---

[4] The United States conceded that the alleged victim did not know about the incidents involving Jamon and Evans before the alleged rape on September 21, 2005. See Transcript of Hearing at 81:23-82:13. Because she did not know about them, this evidence could not be offered for the non-propensity purpose of showing her lack of consent emanating from fear of what Zuni had allegedly done to these women. The United States told the Court that the alleged victim knew about the incident involving Bicenti only to the extent that there would likely be a charge against him for battery and violating a restraining order; she did not know the specifics of the incident. See id. at 81:2-22. Regarding the incident involving Upshaw, the alleged victim learned of the incident a week after it occurred, and Zuni indicated to her that it was an "innocent kiss." Id. at 60:5-61:5. Thus, these incidents have little or no value on the issue of intent. The Court will, however, examine them as part of a common pattern or scheme.

of similar conduct, because the United States does not allege that he assaulted her in any manner during this period. It also tells the jury nothing about whether Zuni knew that the alleged victim consented or intended to assault her regardless of her consent, because the United States does not allege that their relations during this period were anything other than consensual. The jury is likely to take from this evidence little more than the conclusion that Zuni is a bad person who uses immoral means to get what he wants.

Similarly, Zuni's alleged assault and battery of Bicenti is not relevant to the non-propensity purposes that the United States has set forth. It is not part of a pattern of similar conduct connecting it to the alleged kidnapping and rape on September 21, 2005, because the United States does not allege that Zuni sexually assaulted her. Further, the Tenth Circuit has indicated that a defendant's assault of one person generally has no bearing on whether a defendant intentionally assaulted another person. See United States v. Hogue, 827 F.2d 660, 663 (10th Cir. 1987)("Evidence of the systematic abuse of a particular victim tends to negate the defense of accident because it shows that the defendant had strong feelings toward a particular individual that may have contributed to the formation of intent or motive. In contrast, Mr. Hogue's prior and subsequent assaults on Ms. Gould and her children do not have any bearing on the question of whether the stabbing of a different victim, Mr. Benny, was accidental or intentional."). That Zuni battered Bicenti in September 1999 does not make it more probable that he intentionally or knowingly kidnapped and raped the alleged victim, unless one draws from this evidence the conclusion that Zuni's character is abusive in nature – the forbidden propensity purpose.

The other prior acts are, for the most part, relevant to a proper non-propensity purpose. The attempted and completed sexual assaults against the alleged victim on May 31 and September 10,

2005, are relevant, because they make it more probable that Zuni knew the alleged victim did not consent to sex on September 21 based on her prior lack of consent. These two assaults also make it more probable that Zuni intended to have sex with the alleged victim regardless of her consent, because he had allegedly intentionally had sex or attempted to have sex with the alleged victim regardless of her consent in the past. See United States v. Cuch, 842 F.2d at 1177; United States v. Joe, 8 F.3d 1488, 1495-96 (10th Cir. 1993)(concluding that a prior sexual assault could be used to show the defendant's intent to commit future acts of violence against the same person). Similarly, the battery and false imprisonment of the alleged victim in 2003, and the incident at the soccer game on September 17, 2005, shows Zuni's knowledge that the alleged victim did not consent to sex on September 21, 2005, and that Zuni intended to have sex with her regardless of her wishes. See United States v. Wooten, 377 F.3d 1134, 1143 (10th Cir. 2004)(finding that a district court properly admitted a prior incident where the defendant threatened the alleged victim with a knife because it showed the defendant's intent to kidnap the victim at a later time and the alleged victim's lack of consent to the subsequent kidnapping).

Regarding the incidents with other women, these prior acts are relevant to show Zuni's knowledge of, and intent to commit the charged offenses regardless of, the alleged victim's lack of consent. See Government of Virgin Islands v. Pinney, 967 F.2d 912, 915-16 (3d Cir. 1992)(determining that the defendant's prior sexual assault against one girl tended to prove his knowledge and intent in abusing another girl); United States v. Winters, 729 F.2d 602, 604 (9th Cir. 1984)(deciding that the district court correctly allowed evidence of the defendant's prior sexual enslavement of women to show that he intentionally and knowingly enslaved women subsequently). These acts are not relevant to show that Zuni engaged in a pattern of sexual activity on September

21, 2005, of which these other incidents are a part, because there is no pattern tying these acts to the charged offenses. In one case, Zuni is a police officer (Upshaw), but in the others he is without law enforcement authority. Zuni was in a domestic relationship with the alleged victim, but not with Upshaw, Evans, or Jamon. Zuni allegedly had sex with Evans and the alleged victim, and attempted to have sex with Jamon, but did not have sex or attempt to have sex with Upshaw. Unlike the defendant in United States v. Roberts, there is no set of characteristics that is common in each incident. See United States v. Roberts, 185 F.3d at 1142. Because no theory other than the forbidden propensity purpose unites these disparate events – that Zuni is an abuser of women and so must have abused the alleged victim – this evidence is not relevant to the non-propensity purpose of common pattern. See Government of Virgin Islands v. Pinney, 967 F.2d at 916 ("While it is not altogether clear what the trial court had in mind when it referred to a 'common plan or scheme,' the government has been unable to articulate any theory that unites these isolated events which occurred six years apart, without resorting to the kind of character-based inference prohibited by Rule 404(b).").

The third step, whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice, counsels allowing the United States to introduce some of the relevant evidence. The probative value of the conduct involving the alleged victim is high, because it makes it highly probable that Zuni knowingly and intentionally forced himself upon the alleged victim given their prior history of abuse, violent confrontations, and rape or attempted rape. The evidence sheds much light on their relationship and whether Zuni can plausibly argue that he knew nothing of the alleged victim's lack of consent or intended to have only consensual sex with her. While there is a chance that the jury may convict Zuni based on its emotional reaction to this negative

-16-

history, the Court does not conclude that this possibility substantially outweighs the high probative value of this evidence. See United States v. Tan, 254 F.3d at 1212 ("Even if this type of prejudice is found, it must *substantially* outweigh the probative value of the evidence in order to be excluded under Rule 403." (emphasis in original)).

The acts concerning the other women, however, are a different story. While his assaults against these women are somewhat probative of his knowledge and intent to assault the alleged victim, the dissimilarity of these uncharged offenses to the charged offenses makes the evidence's probative value small. See United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992)(noting that the prior act was "nearly identical" to the charged act); United States v. Hadley, 918 F.2d 848, 851-52 (9th Cir. 1990)("[I]f used to prove intent, the prior act must be similar to the offense charged. . . . The evidence was highly probative on the question of intent, especially in light of the similarity found between the prior acts and the offense charged."), cert. granted, 503 U.S. 905, cert. dismissed, 506 U.S. 19 (1992), rehearing denied, 506 U.S. 1087 (1993); United States v. Winters, 729 F.2d at 604 (finding that similarity between two acts made the prior act relevant on defendant's intent to commit the subsequent act). On the other hand, the danger that the jury's revulsion at these acts may cause it to convict Zuni on the basis of its disgust alone is very high, given the number of prior acts and their sexual nature. While the Court is mindful that exclusion under rule 403 is a drastic remedy and should be sued sparingly, such an order appears appropriate for the incidents with the other women. Because the incidents with other women do not fairly constitute a pattern and has weak probative value on intent, and because the possibility of unfair prejudice is real and considerable, the

danger of unfair prejudice substantially outweighs the small probative value of this evidence.[5]

In sum, the Court will allow the United States to introduce the following evidence: that Zuni battered and falsely imprisoned the alleged victim on June 13, 2003; that Zuni attempted to force the alleged victim to have sex with him on May 31, 2005; that Zuni filed an internal affairs complaint against the alleged victim in 2005; that Zuni sexually assaulted the alleged victim on September 10, 2005; the soccer incident on September 17, 2005; and the res gestae events of September 21, 2005.

**IT IS ORDERED** that the Defendant's Second Motion in Limine is granted in part and denied in part. The United States may introduce that Zuni battered and falsely imprisoned the alleged victim on June 13, 2003; that Zuni attempted to force the alleged victim to have sex with him on May 31, 2005; that Zuni filed an internal affairs complaint against the alleged victim in 2005; that Zuni sexually assaulted the alleged victim on September 10, 2005; the soccer incident on September 17, 2005; and the res gestae events of September 21, 2005. The Court otherwise grants the motion.

_____
UNITED STATES DISTRICT JUDGE

---

[5] At the hearing, the United States conceded that the other wrongs and acts were not crimes under rule 413, and it sought admission of the evidence only under rule 404(b), not rule 413. See Transcript of Hearing at 62:25-63:4.

*Counsel*:

David C. Iglesias
  United States Attorney for the
    District of New Mexico
Charles L. Barth
Fred C. Smith
  Assistant United States Attorneys
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Ray Twohig
Ray Twohig, P.C.
Albuquerque, New Mexico

    *Attorney for the Defendant*