IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

                                                                    No. CR 05-CR-2369 JB

vs.

DANIEL ZUNI,

       Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM AND OBJECTIONS TO PRESENTENCE REPORT

Defendant Daniel Zuni, through his attorney Ray Twohig, Submits his Sentencing Memorandum and Objections to the presentence report.

### OBJECTIONS TO PRESENTENCE REPORT

Defendant previously submitted objections to the presentence report to the probation office, and that office has submitted an addendum and cosmetically revised the presentence report. However, substantively it is no different than the initial report, and most objections must be resubmitted to this Court with some additional argument concerning each issue and the responses of the probation office.

Disclosure Date: November 7, 2006. See attached mail log (redacted) by counsel's office.

Paragraph 5: Object, there was no sexual assault, but rather consensual sexual intercourse. The jury found Defendant not guilty of Count 2. The addendum asserts that despite the acquittal there is proof of Count 2 by a preponderance of the evidence. This assertion is not accompanied by an analysis or review of any of the evidence from the trial which would justify this attempt to have this Court disregard the jury's verdict. This

assertion is inaccurate, and should be deleted from the presentence report.[1] Moreover, the Court should interpret the evidence from the trial in the light most favorable to the verdicts on both counts, not just the count of conviction. Finally, to decide contrary to the jury verdict, that a sexual offense was committed for sentencing purposes would violate the Defendant's Sixth Amendment Right to a jury trial.

      The presentence report relies on United States v. Watts, 117 S.Ct. 633 (1997). That pre-Booker case discussed the breadth of sentencing discretion and noted by quoting from an earlier case that an acquittal merely means there was a failure of proof beyond a reasonable doubt of some element of the crime charged, and without specific findings by a jury, the source of that failure can't be identified. Thus, the Government is not precluded from relitigating any fact in an acquitted charge in another proceeding, and Watts holds that this court is not generally barred from finding a fact which has been proved by a preponderance of the evidence, even though there was an acquittal. However, in considering this general principle, Justice Stevens' dissent is important to consider. He strongly disagreed that the guidelines should be applied in such a manner that "precisely the same range resulted from the acquittal as would have been dictated by a conviction." He also pointed out that McMillan was wrongly decided in holding that a sentencing factor need not be established beyond a reasonable doubt. Review of the sentencing guidelines policy on multiple offenses likewise compelled Justice Stevens to reach the opposite result—the policy relied on multiple offenses of conviction and did not include offenses of acquittal. He dissented on the constitutional principle that

---

[1] A finding of sexual assault or other sexual misconduct has a substantial impact on BOP classification and placement in addition to guideline analysis.

punishment should be based on conduct which has been proven beyond a reasonable doubt.

Later, in United States v Booker, 543 U.S. 220, 125 S.Ct. 738 (2005) the opinion on constitutionality of the guidelines was authored by Justice Stevens. In it, the Court evaluated the significance of cases decided since Watts requiring proof of sentencing factors beyond a reasonable doubt. Apprendi, Ring and Blakely made clear that sentencing based on conduct not proven beyond a reasonable doubt to a jury was unconstitutional. Justice Stevens pointed out that finding such sentencing facts by a preponderance of evidence without a jury trial had been held unconstitutional in that series of cases and limited the Watts holding on the basis that the arguments accepted in Apprendi, Ring and Blakely were not made in that case—it also declined to apply Watts to avoid the finding of unconstitutionality of the guidelines if mandatory. The Stephens majority decision reaffirmed Apprendi: any fact other than a prior conviction which is necessary to support a sentence exceeding the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved by a jury beyond a reasonable doubt." Booker at para. 82. The reliance of the presentence report on Watts is misplaced in light of Apprendi and Booker.[2]

Moreover, the author of the presentence report relies on statements Denise Billy made to police instead of her trial testimony and fails to consider the testimony of the Defendant to discern whether he made admissions which might be considered under Apprendi and Booker. It is as though the Breyer majority opinion holding the guidelines

---

[2] While not directly on point, the discussion in United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005) peripherally discusses this argument. It does so on the basis of drug quantity analysis, and not on the basis of an acquitted count.

advisory trumps the Apprendi analysis and permits this Court to disregard the jury verdict. At trial, she testified that at El Morro she didn't cry out, didn't seek help, no force was used on her, though she said she did tell Mr. Zuni to stop several times when he persisted in his sexual advances. She was worried about being seen, and said that she didn't want to have sexual intercourse, and told him to stop when it began because her stomach was hurting—a complaint which was not true, but which she had used in the past when she didn't want to continue with sexual intercourse once it had begun. The same picture emerged at trial about the later sexual activity in the vehicle—she testified that she told him to stop, and that he persisted until she told him to stop because of her stomach, and he did and changed positions as they had often done when she falsely complained about her stomach hurting. There was considerable doubt about the truthfulness of her testimony that she tried to stop their sexual activity. She was driving the vehicle and could easily have driven away from him. She could easily have gotten help if she was being assaulted while at El Morro as several witnesses made clear. The most significant witness was Officer Moosman, who was there, would have helped her, and testified to others working nearby and to security procedures. She knew there was law enforcement security there, as she testified on cross examination. If she had truly refused Mr. Zuni's sexual advances in any way which was communicated to Daniel Zuni at El Morro, he would have been convicted by the jury of the charge in count 2. Since the defense was consent, the Court should recognize that the jury accepted his testimony and the other evidence that this was consensual intercourse. Her prior statements to police should not be used by the Court to change that result for

4

sentencing purposes. Her trial testimony which the jury disregarded should likewise be disregarded by this Court. More importantly, the Sixth Amendment right to jury trial and the double jeopardy clause of the Eighth Amendment do not allow this Court to find that Defendant committed the crime that the jury acquitted him on.

Paragraph 7: Still omits important facts. Defendant and Denise Billy were discussing reconciliation, he asked to see her phone, and there was a struggle over the phone, during which the seatbelt was wrapped partially around her neck. In order to be sure Daniel Zuni didn't see her cell phone, and thus find out about her sexual involvement with Elroy Naswood, who testified at trial to his sexual relationship with her (not Daniel Notsinneh as erroneously mentioned in initial objections), she left her cell phone with the cashier of El Sabino. She did her best to prevent him from learning where she had left it in order to avoid discovery of that ongoing relationship, which was made evident during the trial through her testimony and the testimony of Officer Naswood.

Paragraph 8: In addition to the objections to Paragraph 5, which are not repeated here, this paragraph requires further objection. It contains facts about the sexual incident solely from the standpoint of Denise Billy, and omits the Defendant's version, which the jury relied on in finding him not guilty. His trial testimony should be relied on rather than the FBI report of her version. The conversation between them while she was on the edge of the cliff should likewise include his testimony about it. The Defendant was found not guilty of Count 2, and this report is written as though he were convicted of that crime. It ignores the fact that his consent defense was accepted by the jury.

5

Moreover, her actions in going to the edge and sitting there made Mr. Zuni believe Ms. Billy may be suicidal, and their discussion was more detailed than set forth in this summary paragraph. It reflected his concern about her and his effort to dissuade her from taking her own life.

Though the presentence report author claims that paragraph eight is based on trial transcripts including the Defendant's testimony, it is slanted in a direction contrary to the jury's verdict of acquittal on count two in an effort to persuade this Court to disregard the jury's verdict and make contrary findings.

Paragraph 9:  In addition to the objections to Paragraph 5, which are not repeated here, this paragraph requires further objection. They traversed this route by agreement, and their sexual activities were consensual. Reference to this as nonconsensual sexual activity is contradicted by consideration of the evidence at trial based on the jury verdict on count two. In truth, she did not say she did not wish to have sexual intercourse with him, nor did she do anything to communicate that wish, as he testified. He was acquitted of using any force to have sexual intercourse with her as explained above.

Paragraphs 12-15—The Defendant's trial testimony was not included in these paragraphs, to which Defendant objects. In response to Defendant's objection to paragraph 8, the presentence report writer refers to paragraphs 12-15, as though a summary of an interrogation by an FBI agent contained in an FBI report is an adequate substitute for trial testimony which is subject to cross examination, and on which a jury relied to reach its verdict. These paragraphs omit the details about the cell phone

struggle and the discussions about reconciliation which was a component of the jury's conclusion that their sexual encounter was consensual. Moreover, like the FBI report, the presentence report includes primarily the portions of the Defendant's interrogation which incriminate him. In his trial testimony, he explained fully how the sexual incidents occurred, and that they were consensual. The jury found him not guilty of count two. This Court should not find facts which are inconsistent with the jury verdict for the reasons already set forth above.

      Paragraph 27:  Notsinneh should be replaced with Naswood.

      Paragraph 36:  Object to six level increase. This enhancement is intended to apply to actions of the Defendant during the course of the kidnapping. This can be seen from the Application Notes to USSG 2A4.1. Note 4 contains an explanation of the three general categories of kidnapping in the Background section. One is kidnapping that occurs "as part of or to facilitate the commission of another offense (often sexual assault)." Then, Note 3 defines the term "sexually exploited" used in the enhancement to include "offenses set forth in 18U.S.C. ss 2241-2244, 2251, and 2421-2423. One such offense was included in the indictment in this case, Aggravated Sexual Assault, which was Count 2. Defendant was acquitted on that count.

      The kidnapping took place as part of a family fight between two people who had lived together for many years and had two children together. As such, it was part of a domestic violence offense during which the jury has found that she was restrained and confined against her will. Thus, in accordance with Instruction No. 10 given by the Court, kidnap means "to unlawfully hold, keep, detain, and confine the person against

that person's will. Involuntariness or coercion in connection with the victim's detention is an essential part of the offense." Conversely, when the involuntariness or coercion ends, the kidnapping is concluded.

The Defendant was acquitted of Count 2. The charge was based on sexual intercourse which occurred in the course of the Zuni/Billy visit to El Morro Monument. Intercourse and foreplay were not denied by Defendant, who testified that it was consensual. The jury accepted his testimony and the other evidence concerning that count. A substantial reason for doing so was the testimony of Denise Billy and the Ranger, Fred Moosman. He was present at El Morro and available to assist in the event she needed any help, and she knew law enforcement officers were available there. She did not seek assistance, and was no longer being kidnapped by the time she arrived there.

It is submitted that the kidnapping, wherever it began along the highway, ended some time soon after they arrived at El Morro and she was free to leave and free to get help if she wanted to do so. Thus, the sexual intercourse at that location which the jury was instructed would constitute the crime charged if it was deemed not to be the product of such coercion. This means that the jury concluded that it was consensual, and thus she was no longer kidnapped at that point because the element of confinement no longer was present. See Instruction No. 12.

Later additional incidents of sexual intercourse took place after she drove her car toward Gallup by a back road and they stopped. Those acts of intercourse were not charged, and also took place well after the kidnapping ended. Though she told Mr. Zuni

8

to stop on one occasion because her stomach hurt (a lie she often told him) he did stop and changed positions as they often did.

This means that the act of kidnapping was neither for sexual purposes nor was there exploitation of the kidnapping confinement in order to compel sexual intercourse. The six points should not be added.

Again, the probation officer persists in relying on the version of Denise Billy which was rejected by the jury, and seeks to have this Court disregard the jury verdict on count 2. The objections to doing so are detailed in the objection to count 5, above. Paragraph 39: Object to the obstruction adjustment of two points. USSG S 3C1.1 contains extensive commentary to guide application of the general principles contained in this section. Application Note 2 is as follows:

> "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.  Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction.  In rare situations a defendant may clearly demonstrate an acceptance of responsibility of his criminal conduct even though he exercises his constitutional right to trial.  This may occur, for example, where a defendant goes to trial to assert a preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct.)  In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct."

Defendant testified accurately based on his own recollection of detailed events. His recollection was based on events which occurred many months earlier and his testimony followed and was during part of his 295 consecutive days in solitary confinement for at least 23 hours each day. His version of the facts differed from Denise

Billy's version in many respects, but that is not enough to constitute obstruction of justice under this provision of the guidelines. Despite the difficulties Mr. Zuni encountered during his lengthy pretrial confinement, the jury obviously believed he was accurate on some events, and she was accurate on others, and thus found him guilty on one count and not guilty on the other.  He exercised his right to testify at his own trial in his own defense. This paragraph of the presentence report primarily points to areas of his testimony which were contrary to the testimony of Denise Billy, and not sufficient to add two points for obstruction.

The testimony which contradicted the agent's version of Defendant's prior testimony that "we are going to die today" is not a sufficient basis to add two points, and was explained by Defendant during his trial testimony. This is a difference in memory which does not establish a basis for obstruction of justice.

The Response to this objection relies on the erroneous recounting of the trial testimony. For example, it conflates the decision to go to El Morro with the events shortly before they got to the El Sabino. She didn't tell Mr. Zuni that she did not want to go to El Morro until they were 12 miles out of Gallup and the incident occurred concerning the search for the phone and the seatbelt problem. Her testimony about him grabbing the steering wheel relates to that point, not to the initial departure from Gallup. She said during her testimony that the stop sign going toward Zuni had a sign to El Morro, and it was then he told her to turn left to go to El Morro.

Paragraph 40: Adjusted Offense Level should be 32.

Paragraph 42: Total Offense Level should be 32.

Paragraphs 55 and 56: There was no arrest, and this paragraph should be stricken. The probation office refers to these as charges, but in the absence of arrests, they are merely accusations which were never adjudicated. There is no evidence to support them.

SENTENCING ARGUMENT

United States vs. Booker, *supra*, made the sentencing guidelines advisory, and this is an appropriate case for sentencing outside of the guideline range found by the probation office.[3] Defendant served for many years as a police officer, then as a court liason officer. Though he had past problems with his relationships with women, he never before was convicted of using force on any woman. This incident is not a typical kidnapping case because it arose from a family fight over childcare and suspected infidelity. He will likely have to serve his sentence in lockdown due to his law enforcement background as he has since his arrest, and thus the sentence will have a far more severe impact on him than on others who are sentenced by this Court. His young children are important to him, and he to them, and he will despair to a point of serious risk to himself if a long sentence is imposed such as that which is sought by the probation office. He realizes that he has been convicted, but his hope will sustain him if he sees the possibility that he can again be the father to his two children that he was when this incident removed him from their lives. While that cannot occur during their childhood, it still is possible while they are young enough to benefit from his guidance. His lack of any criminal convictions at this stage of his life indicates he is not an evil

---

[3] The rate of below range sentences has increased to 12.5% since United States v. Booker according to the final report of the Sentencing Commission on the impact of Booker in March, 2006. http://www.ussc.gov/booker_report/Booker_Report.pdf.

person who needs long term incarceration, but rather a victim of his own excess zeal to preserve his family. That motivation, properly held in check, will steer him toward a law abiding life after his release from prison.

    The court also has the letters which will be copied and provided to the court's chambers after filing this Memorandum. These letters demonstrate the support Mr. Zuni has in the community and the strong likelihood that he will succeed in his rehabilitation in the limited area which led to his conviction.

                                Respectfully submitted,

                                RAY TWOHIG, P.C.

                                /s/ Ray Twohig
                                _____
                                Ray Twohig
                                Attorney for Defendant
                                8998 Rio Grande, Blvd., N.W.
                                Albuquerque, NM 87114
                                Phone: 505/898-0400
                                Fax: 505/898-0004

I hereby certify that on the 3rd day of January, 2007, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Charles Barth
Assistant U.S. Attorney

I further certify that on such date
I served the foregoing on the following
non CM/ECF participants via facsimile:

Mindy Pirkovic
United States Probation Office


/s/ Ray Twohig
_____
Ray Twohig

13

This document was created with Win2PDF available at http://www.daneprairie.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.